STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPEN-SATION DIVISION, Appellant (Petitioner),

v.

Nancy J. SPARKS, Appellee (Respondent).

No. 98–6.

Supreme Court of Wyoming.

March 1, 1999.

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, Cheyenne, Wyoming, Representing Appellant.

George Santini of Ross, Ross & Santini, L.L.C., Cheyenne, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The issue presented by this appeal requires this Court to define the phrase, "the normal activities of day-to-day living," that is used in Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) (Michie Cum.Supp.1996). We hold that the phrase does not include those activities of an employee, while engaged in job-related duties, over which the employer has the right to control the details. The Office of Administrative Hearings ruled that a back injury sustained by Nancy J. Sparks (Sparks), who was working as a hospital nurse when she bent over a cart to obtain medication for a patient, was not excluded from coverage under the Wyoming Worker's Compensation Act (Wyo. Stat. Ann. §§ 27–

* Chief Justice at time of oral argument; retired November 2, 1998.

14–101 through 27–14–805 (Michie Cum. Supp.1996 & 1997)). The employer had the right to control the details of the work Sparks was performing at the time of her injury, and we affirm the Order Awarding Benefits which the Office of Administrative Hearings entered.

In the Brief of Appellant, filed by the State of Wyoming, as the Wyoming Workers' Safety and Compensation Division (Division), the issue before us is stated in this way:

> The Employee hurt her back lifting a pill from a medication cart at work as a nurse. The Hearing Examiner did not decide if lifting the pill was a normal activity of day-to-day living. Instead, he ruled that activities occurring at work, which are required by work, are not subject to the daily living exclusion.
>
> A. Was the Hearing Examiner's decision contrary to law?

The issues are stated in this fashion in the Appellee's Brief, filed for Sparks:

1. Did the hearing officer correctly interpret the "normal activities of day to day living" exception found in § 27–14–102(a)(xi)(G), W.S.1977 (1996 Repl.)?

2. Does § 27–14–102(a)(xi)(G), W.S.1977 (1996 Repl.), violate Article 10, § 4 of the Wyoming Constitution by exclusion of injuries arising from the normal activities of day to day living from the definition of "injury" for purposes of compensability under the Wyoming Workers' Compensation Act?

There is no dispute between the parties about any of the facts in this case. Sparks was performing the usual duties assigned to her in her regular employment as a nurse at United Medical Center (the hospital) in Cheyenne, on April 13, 1997. She was assigned to administer medication to patients in the behavioral health unit at the hospital. She bent over to pick up a pill for a patient from the medicine cart, and experienced a severe and sudden pain in her lower back. That pain dissipated when she stood up, and it did not manifest itself the rest of that work day. When Sparks awakened the next morning, she had a stiff back, but she reported to work as usual. She experienced increasing pain throughout the course of that day, and eventually she reported it to a supervisor, who allowed her to leave early and to take the following day off.

Sparks' condition had not improved by April 18, 1997, and she went to see a physician recommended by the hospital. The physician prescribed muscle relaxants and bed rest. A few days later, however, Sparks experienced numbness in her right leg, and she then went to a different doctor, who ordered an MRI. The MRI disclosed that Sparks suffered from a herniated disc in the lumbar region of her spine.

On April 22, 1997, Sparks completed the employee section of a Report of Occupational Injury or Disease, and the hospital completed the employer portion of that report on April 23, 1997. The report was received by the Division on April 28, 1997, and the following day, the Division issued a Final Determination, denying benefits for Sparks' injury. The explanation presented by the Division was that Sparks' act of leaning over to pick up the medication from the medicine cart was a normal activity of day-to-day living, and that coverage was precluded by Wyo. Stat. Ann. § 27–14–102(a)(xi)(G).

Sparks objected to the Final Determination, and the matter was referred to the Office of Administrative Hearings, which conducted a hearing on Sparks' case on August 25, 1997. The hearing examiner determined that Sparks' injury was covered and compensable. The hearing examiner explained that the phrase "day-to-day living" in Wyo. Stat. Ann. § 27–14–102(a)(xi)(G), while vague, is not intended to deny benefits to workers injured even though they were performing actions that they also could perform outside of the work environment. The hearing examiner addressed the interpretation of Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) in this way:

> 8. The Division contends that Claimant suffered her injury by the simple everyday act of bending over and therefore her injury is not a compensable one. Claimant argues that she was involved in an action required by her job and was performing her job at the time she injured her back. This Office is unaware of any Wyoming

District or Supreme Court decisions dealing with the interpretation to be given Wyo. Stat. § 27–14–102(a)(xi)(G) (1996). Perhaps this case will eventually result in such a decision. In any event, this Office is convinced that Claimant's argument is the correct one.

The hearing examiner did comment that if the interpretation of the statute urged by the Division was adopted, there would be very minimal coverage of injuries under the worker's compensation system.

 The Division filed a timely Petition for Judicial Review in the district court, and the district court certified the case to this Court in accordance with W.R.A.P. 12.09(b). The only question to be resolved is the construction of the statute. Our standard of review for such cases is quite clear:

> The interpretation and correct application of the provisions of the Wyoming Workers' Compensation Act is a question of law over which our review authority is plenary. *Tenorio v. State ex rel. Wyoming Workers' Compensation Div.*, 931 P.2d 234, 237 (Wyo.1997); *Claim of Nielsen*, 806 P.2d 297, 299 (Wyo.1991). Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. *Matter of Corman*, 909 P.2d 966, 970 (Wyo.1996); *Aanenson v. State ex rel. Wyoming Workers' Compensation Div.*, 842 P.2d 1077, 1079 (Wyo.1992). We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *Matter of Gneiting*, 897 P.2d 1306, 1308 (Wyo.1995); *City of Casper v. Haines*, 886 P.2d 585, 587 (Wyo. 1994).

*Wright v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 952 P.2d 209, 211 (Wyo.1998).

The statute in question reads, in relevant part:

> (xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:
>
> * * *
>
> (G) Any injury resulting primarily from the natural aging process or from the normal activities of day-to-day living, as established by medical evidence supported by objective findings[.]

Wyo. Stat. Ann. § 27–14–102(a)(xi)(G). In accordance with our standard of review, this Court is tasked with interpreting the statute to determine whether the hearing examiner correctly construed and applied this language when he ruled that Sparks' injury was not excluded from coverage because it did not result primarily from the normal activities of day-to-day living.

In its argument to this Court, the Division contends that the language of Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) is unambiguous, and, consequently, there is no need to interpret the statute. The Division's position is that since Sparks was injured doing a very simple physical activity that most people accomplish frequently, her injury is precisely the kind for which the legislature intended to deny benefits. Despite the earnestness of the Division's arguments, we agree with the hearing examiner that the language of Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) is ambiguous. The phrase "day-to-day living" is extremely broad and essentially amorphous. We do not know whether it alludes to the daily activities of the employee or the daily activities of the entire population. It indeed is possible for that language to encompass almost any possible human physical effort. We do not assume that, by adopting this language, the legislature intended to abolish worker's compensation benefits in Wyoming. As the hearing examiner pointed out, that could be a possible consequence of adopting the Division's view. We hold that the language of the statute is ambiguous simply because of its lack of any meaningful definitional standards, and we, therefore, proceed to interpret the statute.

This Court has considered only one other case in which Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) was involved. *Cabral v. Caspar Bldg. Systems, Inc.*, 920 P.2d 268 (Wyo.1996). In that case, the hearing examiner determined that a back injury caused by bending to pick up a pack of cigarettes was not compensable because it was the product of a normal activity of day-to-day living. *Id.* at 270. We said that the plain language of Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) imposed the burden upon the party resisting compensation to produce evidence to demonstrate that the injury was the result of normal activities of day-to-day living. *Cabral,* 920 P.2d at 270. We affirmed the denial of benefits on other grounds, without endeavoring to arrive at a definition of what the phrase "normal activities of day-to-day living" connotes. *Id.* at 271.

Decisions of the courts of our sister states are persuasive authority, and they are often helpful when we address novel questions. However, resort to persuasive authority is not available to us in this instance. Kansas is the only one of our sister states that has enacted a "day-to-day living" exception to its definition of compensable injury. Kan. Stat. Ann. § 44–508(e) (1998) reads, in relevant part:

> An injury shall not be deemed to have been directly caused by the employment where it is shown that the employee suffers disability as a result of the natural aging process or by the normal activities of day-to-day living.

No appellate court in Kansas has had an occasion to construe this language of the Kansas statutes.

Consequently, we turn to analogous legal principles in the area of employment law for some guidance in determining what the "normal activities of day-to-day living" are. The legislature, by Wyo. Stat. Ann. § 27–14–101(b)· (Michie 1997), has specifically renounced any rule affording liberal construction to worker's compensation statutes. Our definition of the phrase, "normal activities of day-to-day living," must be reached without

the assistance of any presumption in favor of coverage. In pursuing the task confronting us, our goal is to establish a definition that will not foreclose compensation for injuries that manifest themselves at work, even though the employee may be involved in an activity that most people accomplish on a daily basis.

We are persuaded that the best analogy is found in the area of master/servant concepts; specifically, the doctrine relating to the right of control. We have previously invoked that doctrine to distinguish independent contractors from agents and employees for purposes of vicarious liability. *Krier v. Safeway Stores 46, Inc.*, 943 P.2d 405, 411 (Wyo.1997). It is because of the right to control the details of the activities in which the employee is engaged that we impute vicarious liability to employers for the acts of their employees. Conversely, vicarious liability does not attach to one who hires an independent contractor because of the absence of that right of control. The explanation found in a leading treatise is:

> [S]ince the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk * * *.

W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 71 at 509 (5th ed.1984) (footnote omitted).

We said, when confronted with a claim that coverage for an injured individual was not available because he was an independent contractor, alluding to the tests for resolving that question:

> An outstanding one of these is whether the employer has or has not retained the right of control over the party whose status is in question. If he has retained such right, the party is generally regarded as a servant. *Stockwell v. Morris,* 46 Wyo. 1, 22 P.2d 189, 28 R.C.L. 762; 71 C.J. 455, and cases cited.[1]

1. *Stockwell v. Morris,* 46 Wyo. 1, 22 P.2d 189 (1933) was a tort case involving a question of

vicarious liability.

*Fox Park Timber Co. v. Baker,* 53 Wyo. 467, 84 P.2d 736, 743 (1938). We observe that several of our sister states also invoke the right of control test in worker's compensation cases for determining the issue of whether a claimant is an employee. *Kelley v. Rossi,* 395 Mass. 659, 481 N.E.2d 1340, 1342 (1985); *State v. Turner,* 952 S.W.2d 354, 357 (Mo. App.1997); *Oregon Drywall Systems, Inc. v. National Council on Compensation Ins.,* 153 Or.App. 662, 958 P.2d 195, 197 (1998); *Glover By and Through Dyson v. Boy Scouts of America,* 923 P.2d 1383, 1385 (Utah 1996). We deem this same doctrine, the right to control the details of the activity in which the employee is engaged, an appropriate test to determine whether the activities at work are normal activities of day-to-day living. The purpose of the doctrine in vicarious liability cases translates readily to worker's compensation issues. In both instances, the doctrine identifies the party who is vested with discretion over the work environment, and is, therefore, in the best position to mitigate the risks. This is an appropriate basis for distinction because the party possessing the ability to mitigate the risk normally should bear the cost of failing to do so.

▮ We are satisfied that when an employee is engaged in activities over which the employer is vested with the right of control, these cannot be normal activities of day-to-day living because the employer has no such right with respect to the normal activities of day-to-day living. Consequently, the statutory phrase would allude to those activities accomplished within the workplace over which the employer is not vested with any right of control. We turn then to what the phrase "right of control" connotes. In *Natural Gas Processing Co. v. Hull,* 886 P.2d 1181, 1185 (Wyo.1994) (emphasis in original), we quoted this language:

> ***"The control of the work reserved in the employer which effects a master-servant relationship is control of the means and manner of performance of the work,*** as well as of the result * * *."* 41 Am.Jur.2d *Independent Contractors* § 8 (1968).

It follows that when the employer has the right of control and can tell the employee not only what to do, but how to do it, that is not one of "the normal activities of day-to-day living." When we examine the factual background of this case, it is clear that the hospital had the right to control the means and manner of the performance of Sparks' tasks as well as the result. We hold that Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) does not exclude from coverage those injuries sustained at the workplace when the employer has the right to control the details of the activity in which the employee at that time was engaged.

We affirm the decision of the hearing examiner.