2002 WY 141

**SOS STAFFING SERVICES, INC., a Utah corporation, and Daniel L. Pillon, Appellants (Defendants/Third Party Plaintiffs),**

and

**Schlumberger Technology Corporation, a Texas corporation, Appellant (Third Party Defendant),**

v.

**Paul D. FIELDS, Appellee (Plaintiff).**

No. 01–93.

Supreme Court of Wyoming.

Sept. 24, 2002.

Gregory C. Dyekman and Brian C. Shuck of Dray, Thomson & Dyekman, P.C., Cheyenne, WY, Representing Appellants SOS Staffing Servs., Inc. and Pillon. Argument by Mr. Dyekman.

Steven G. Greenlee and C. Michael Montgomery of Montgomery, Kolodny, Amatuzio, Dusbabek & Parker, L.L.P., Denver, CO, Representing Appellant Schlumberger Technology Corp. Argument by Mr. Greenlee.

George Santini of Ross, Ross & Santini, L.L.C., Cheyenne, WY, Representing Appellee. Argument by Mr. Santini.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1]  This case comes to us on two certified questions from the United States District Court for the District of Wyoming:

1.  Is a temporary employee entitled to "co-employee immunity" under the Wyoming Worker's Compensation Act for injuries he allegedly caused to a co-worker while working within the scope of his employment for the same employer?

2.  Is a temporary employment services provider vicariously liable to a worker allegedly injured by a temporary employee provided by the temporary employment services provider to the worker's employer?

## FACTS

[¶ 2] The certification order from the United States District Court sets forth the following undisputed facts:

[¶ 3]  Dan Pillon was hired as an employee by Schlumberger Technology Corporation in 1980.  As of March 31, 1997, Mr. Pillon worked for Schlumberger as a senior operator.  On March 31, 1997, Mr. Pillon resigned from his employment at Schlumberger so that he could access his profit sharing account in order to buy a ranch.  As part of his resignation, Mr. Pillon wanted to continue working for Schlumberger, and it was agreed between Mr. Pillon and Schlumberger that he could continue to work for the company under a temporary employee arrangement.

[¶ 4]  SOS Staffing Services provided temporary employment services to Schlumberger.  SOS Staffing provided payrolling services to Schlumberger with respect to Mr. Pillon.  Mr. Pillon was referred to SOS Staffing by Schlumberger to be hired and placed on the SOS "payroll."  Mr. Pillon then worked for Schlumberger as a temporary employee for a time determined by Schlum-

berger, and Schlumberger would pay SOS Staffing a fee from which SOS Staffing would pay Mr. Pillon.  Mr. Pillon's work for Schlumberger did not change with the change in his status from regular employee to temporary employee.  The nature, scope, details, manner, and method of Mr. Pillon's day-to-day work and duties did not change.  He continued to work as a senior operator, with the very same duties and responsibilities as a regular employee.  His typical work assignments were the same as before.  He continued to be supervised by the same Schlumberger employees.

[¶ 5]  SOS Staffing provided no other services to Schlumberger with respect to Mr. Pillon other than the administrative payrolling services.  SOS Staffing did not control the nature, scope, details, manner, or method of Mr. Pillon's day-to-day work or duties while he worked for Schlumberger as a temporary employee.  SOS Staffing did not select, interview, screen, evaluate, supervise, or train Mr. Pillon.  Instead Schlumberger controlled, and had the right to control, the nature, scope, details, manner, and method of Mr. Pillon's day-to-day work and duties while he worked for Schlumberger as a temporary employee.  It was Schlumberger's obligation to interview, screen, select, refer, evaluate, supervise, and train Mr. Pillon.

[¶ 6]  On November 30, 1997, Mr. Pillon was driving a Schlumberger vehicle to a well site as part of his duties as a senior operator for Schlumberger.  Mr. Fields, a regular employee of Schlumberger, was a passenger in the vehicle and was traveling to the well site as part of his duties as an operator for Schlumberger.  On the drive to the well site, Mr. Pillon unexpectedly encountered ice on the road, steered the Schlumberger vehicle to the side of the road, and hit a concrete culvert.  As a result, the vehicle rolled on its side.  Mr. Fields claims he was injured in this accident.  Mr. Fields received worker's compensation benefits for these alleged injuries.

[¶ 7]  Schlumberger and SOS Staffing are separate corporations that filed separate employer reports for purposes of complying

---

* Chief Justice at time of oral argument.

with the provisions of the Wyoming Worker's Safety and Compensation Act. On the report submitted on behalf of SOS Staffing, Daniel Pillon is listed as an employee of SOS at the time of the accident, and SOS Staffing paid premiums on his behalf to the Wyoming Worker's Safety and Compensation Division. At the time of the accident, Paul Fields was listed as an employee of Schlumberger, and Schlumberger paid premiums to the Wyoming Worker's Safety and Compensation Division on his behalf.

[¶ 8] Fields originally filed his complaint against SOS Staffing and Pillon in state court. Pillon and SOS filed a notice of removal of the action to the United States District Court for the District of Wyoming on the basis of diversity of citizenship. Once in federal district court, Pillon and SOS answered and filed a third-party complaint against Schlumberger, claiming that they were entitled to indemnification by Schlumberger in the event it was determined that Fields was entitled to recover from them. Thereafter, Pillon, SOS, and Schlumberger moved for summary judgment. Fields filed a response which was followed by Schlumberger's motion to certify the issues to this court. The motion to certify was unopposed, and the federal district court entered its certification order on May 2, 2001.

### STANDARD OF REVIEW

[¶ 9] We review questions certified to this court pursuant to W.R.A.P. 11. We review a district court's statutory interpretation de novo. *Basin Elec. Power Co-op. v. Bowen*, 979 P.2d 503, 506 (Wyo.1999). The primary objective in interpreting statutory language is to ascertain and effectuate legislative intent. *U S West Communications, Inc. v. Public Service Comm'n*, 988 P.2d 1061, 1064 (Wyo.1999). Legislative intent is ascertained initially and primarily from the words used in the statute. *Wyoming Comty. College Comm'n v. Casper Comty. College Dist.*, 2001 WY 86, ¶ 16, 31 P.3d 1242, ¶ 16 (Wyo.2001). We look first to the plain and ordinary meaning of the words used in the statute. *Id.* at ¶ 17. When the words are clear and unambiguous, a court impermissibly risks substituting its own views for the

intent of the legislature if it attempts to interpret or construe the statute on any basis other than the language used by the legislature. *Id.* at ¶ 16. Where statutory language conveys a clear and definite meaning, this court neither faces the need nor acquires the license to construe the statute. *U S West*, at 1064 (citing *Matter of SYM*, 924 P.2d 985, 987 (Wyo.1996)).

[¶ 10] A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Wyoming Comty. College Comm'n*, at ¶ 17. A statute is ambiguous if it is vague, uncertain, or subject to varying interpretations. *Id.* While differing opinions as to the meaning of a statute are not conclusive of ambiguity, they may be evidence of ambiguity. *Id.* Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Id.*

[¶ 11] In interpreting statutory language, we review all parts of the statute in *pari materia*, giving effect to each word, clause, and sentence so that no part will be inoperative or superfluous. *Matter of Interest of WJH*, 2001 WY 54 ¶ 16, 24 P.3d 1147, ¶ 16 (Wyo.2001). We will not interpret statutes in a manner which renders any portion meaningless or produces absurd results. *Id.*

### DISCUSSION
#### *Applicability of co-employee immunity*

[¶ 12] In answering the first certified question, we begin with the language contained in our own Wyoming Worker's Compensation Act, Wyo. Stat. Ann. § 27–14–101, et seq. In doing so, we are mindful of the legislative intent expressed in § 27–14–101(b) that the common law rule of "liberal construction" shall not apply and the Act is not to be given a broad liberal construction.

[¶ 13] Wyo. Stat. Ann. § 27–14–104 (LexisNexis 2001), the immunity provision of Wyoming's Worker's Compensation Act, provides as follows:

(a) The rights and remedies provided in this act for an employee including any joint employee, and his dependents for injuries incurred in extrahazardous employments

are in lieu of all other rights and remedies against any *employer* and any joint employer making contributions required by this act, *or their employees* acting within the scope of their employment unless the employees intentionally act to cause physical harm or injury to the injured employee, but do not supersede any rights and remedies available to an employee and his dependents against *any other person.*

(b) No contract, rule, regulation or device shall operate to relieve an employer from any liability created by this act except as otherwise provided by this act.

(c) This act does not limit or affect any right or action by any employee and his dependents against an employer for injuries received while employed by the employer when the employer at the time of the injuries has not qualified under this act for the coverage of his eligible employees, or having qualified, has not paid the required premium on an injured employee's earnings within thirty (30) days of the date due.

(Emphasis added.)

[¶ 14] Under subsection (a) of this section, an employer making the required worker's compensation contributions is absolutely immune from liability for injuries suffered by an employee in the course of extrahazardous employment. Additionally under subsection (a), the immunity available to employers extends to their employees so long as they are acting within the scope of their employment and do not intentionally cause injury to a fellow employee. Finally, subsection (a) specifies that the immunity provision leaves fully intact an injured employee's rights against any person other than his employer or another employee of his employer. The first question we must answer, then, is whether Pillon was an employee of Schlumberger at the time of Fields' injury or was instead an "other person" within the meaning of § 27–14–104(a). In making this determination, we look to the 1997 version of the Act in effect at the time of Field's injury.

[¶ 15] The term "employee" is defined in § 27–14–102(a)(vii) (Michie 1997) of the Act as follows:

(vii) "Employee" means any person engaged in any extrahazardous employment under any appointment, contract of hire or apprenticeship, express or implied, oral or written, and includes legally employed minors and aliens authorized to work by the United States department of justice, immigration and naturalization service. "Employee" does not include:

(A) Any individual whose employment is determined to be casual labor;

(B) A sole proprietor or a partner of a business partnership;

(C) An officer of a corporation unless coverage is elected pursuant to W.S. 27–14–108(k);

(D) Any individual engaged as an independent contractor;

(E) A spouse or dependent of an employer living in the employer's household;

(F) A professional athlete;

(G) An employee of a private household;

(H) A private duty nurse engaged by a private party;

(J) An employee of the federal government;

(K) Any volunteer unless covered pursuant to W.S. 27–14–108(e);

(M) Any prisoner or probationer unless covered pursuant to W.S. 27–14–108(d)(ix);

(N) An elected public official, except for a duly elected or appointed sheriff;

(O) The owner and operator of a motor vehicle which is leased or contracted with driver to a for-hire common or contract carrier. . . .

(P) A member of a limited liability company unless coverage is elected pursuant to W.S. 27–14–108(n).

Reading this section alone, and giving the language its plain and ordinary meaning, it would seem that Pillon was an employee within the meaning of the Worker's Compensation Act—he was a person engaged in extrahazardous employment under a contract of hire at the time Fields was injured and did not fall within any of the exclusions set forth in (vii)(A) through (P). However, § 27–14–

102(a)(vii) cannot be read in isolation; it must be read in light of other provisions of the Act, and effect must be given to each word, clause, and sentence so that no portion is rendered meaningless or superfluous. *Matter of Interest of WJH,* 2001 WY 54 ¶ 16, 24 P.3d 1147.

[¶ 16]  Pillon and SOS Staffing argue in their reply brief that in determining whether Pillon is entitled to immunity under § 27–14–104, the court need look only at the definition of employee contained in the act.  We do not agree.  As we have said, § 27–14–104 merely extends the immunity available to employers to "their" employees; it does not create immunity for employees separate and apart from that available to their employers.  If an employer is not entitled to immunity for some reason, neither are its employees.  Therefore, in determining whether an employee is entitled to immunity, we must also determine whether the employer is, in fact, an employer as defined by the Act.

[¶ 17]  W.S.  27–14–102(a)(viii)  (Michie 1997) provides as follows:

(viii) "Employer" means any person or entity employing an employee engaged in any extrahazardous occupation or electing coverage under W.S. 27–14–108(j) and at least one (1) of whose employees is described in W.S. 27–14–301.  "Employer" includes:

(A) The department of employment for Federal Job Training Partnership Act participants if that participation does not otherwise establish a covered occupational arrangement between the employer and employee relationship;

(B) The governmental entity for which recipients of public assistance perform work if that work does not otherwise establish a covered employer and employee relationship;

(C) The governmental entity for which volunteers perform the specified volunteer activities under W.S. 27–14–108(e);

(D) The governmental entity for which prisoners and probationers work or perform community service under W.S. 27–14–108(d)(ix) or (xv);

(E) An owner-operator of a mine at which any mine rescue operation or training occurs;

(F) *A temporary service contractor for a temporary worker;*

(G) Any person, contractor, firm, association or corporation otherwise qualifying under this paragraph as an employer and who utilizes the services of a worker furnished by another contractor, joint employer, firm, association, person or corporation *other than a temporary service contractor,* joint employer, independent contractor or owner and operator excluded as an employee under subparagraph (a)(vii)(O) of this section;

(H) Any employer otherwise qualifying under this paragraph as an employer and participating in a school-to-work program approved by the department of employment, any local school district board of trustees, community college district board of trustees or the department of education, and the employer previously elected coverage in writing pursuant to W.S. 27–14–108(m).

(Emphasis added.)

[¶ 18]  Giving the language in the section its plain and ordinary meaning, it is clear that a temporary service contractor is the "employer" of a temporary worker for purposes of the Worker's Compensation Act. Subsection (F) expressly provides that a temporary service contractor is the employer for a temporary service worker.  Consistent with subsection (F), subsection (G) clearly provides that the term "employer" includes anyone using the services of a worker furnished by another, *except* in the case of a temporary service contractor furnishing the services of a worker to another.  In the latter case, unlike other situations involving workers furnished to another, the temporary service contractor is the "employer" for Worker's Compensation pursuant to the plain language of subsection (F).  Section 27–14–102(a)(xxv) (Michie 1997) further clarifies subsections (F) and (G) by defining "temporary service contractor" as "any person, firm, association or corporation conducting a business that employs individuals directly for the purpose of furnishing services of the em-

ployed individuals on a temporary basis to others."

[¶ 19] Schlumberger, Pillon, and SOS Staffing cite *Franks v. Olson*, 975 P.2d 588 (Wyo.1999) as support for their argument that Pillon is a co-employee and immune from liability under Wyoming's Worker's Compensation Act. However, *Franks* was decided under the 1992 version of the Act which did not contain the temporary service contractor language contained in the Act at the time of Field's injury. Absent the specific language added in 1995 defining temporary service contractors as the employer, the court looked to the definitions of employee and employer contained in the 1992 version and, based upon those definitions, concluded that Olson was a co-employee and immune from liability. Because *Franks* was decided under an older version of the Act which did not include the current temporary service contractor language, the case is not relevant to our determination.

[¶ 20] Giving the applicable statutory language its plain and ordinary meaning, SOS Staffing was a temporary service contractor pursuant to § 27–14–102(a)(xxv) and was Pillon's employer pursuant to § 27–14–102(a)(viii)(F). Given the very specific language of W.S. 27–14–102(viii)(G) excluding temporary service contractors, Schlumberger was not, and by express statutory directive could not be, Pillon's employer for purposes of the Worker's Compensation Act. The conclusion that Schlumberger was not Pillon's employer as that term is expressly and very specifically defined in Wyoming's worker's compensation statutes compels the further conclusion that the immunity available to Schlumberger does not extend to Pillon. As we have said previously, Pillon is entitled to immunity only to the extent that immunity is available to his employer. Wyo. Stat. Ann. § 27–14–104(a). Stated differently, employee immunity is merely an extension of the employer immunity. Pillon's employer, SOS Staffing, has no immunity from liability for injuries to Fields because SOS Staffing paid no premiums on his behalf, and he is not an SOS Staffing employee. SOS Staffing having no immunity from liability for Fields'

injuries, Pillon likewise has no such immunity.

[¶ 21] In reaching this result, we are aware that many legal authorities and jurisdictions which have addressed the issue have reached the opposite result. *Restatement, Second, Agency* § 227 (1958) states that "[a] servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services." 30 C.J.S., *Employers' Liability*, § 175 (1992) states "[a]n employee of one employer who is lent to, and becomes subject to the control of, another employer is generally regarded, as far as concerns the application of the fellow-servant rule, as the employee of the employer to whom he is lent." *Black's Law Dictionary* (7th ed.1999) similarly defines "employee" as "a person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." Black's specifically acknowledges that the employer of an employee borrowed from another may be entitled to assert immunity under worker's compensation laws in some jurisdictions. While we are aware of these authorities, we are constrained by the specific language in Wyoming's worker's compensation statutes to hold that Pillon is not an employee of Schlumberger and for that reason Schlumberger's immunity from liability for Fields' injuries does not extend to Pillon.

### Vicarious liability of SOS Staffing

[¶ 22] Certified question two asks us to determine whether a temporary employment services provider is vicariously liable to a worker injured by a temporary employee provided by the temporary employment service to the worker's employer. We impute vicarious liability to employers for the acts of their employees where the employer controls the details of the employee's work activities. *State ex rel. Workers' Safety & Compensation Div. v. Sparks*, 973 P.2d 507, 511 (Wyo.1999). Vicarious liability does not attach where the employer retains no right of control. *Id.*

[¶ 23] Here, the certified facts are that SOS Staffing provided no services with respect to Pillon except administrative payroll-

ing services. SOS Staffing did not control the nature, scope, details, manner, or method of Pillon's day-to-day work or duties while he worked for Schlumberger as a temporary employee. Schlumberger controlled and had the right to control the nature, scope, details, manner, and method of Pillon's day-to-day work and duties while he worked for Schlumberger. On the date of the injury, Pillon was driving a Schlumberger vehicle to a well site as part of his duties as a senior operator for Schlumberger when he encountered ice on the road, steered the vehicle to the side, and hit a concrete culvert. The vehicle rolled on its side, and Fields was injured. Under these facts, we cannot impute any negligence on the part of Pillon to SOS Staffing.

### CONCLUSION

[¶ 24]   We answer the certified questions as follows:

1.   Schlumberger was not Pillon's employer at the time of Field's injuries under the very specific language of Wyoming's Worker's Compensation Act. Pillon is not, therefore, entitled to immunity from liability for Fields' injuries.

2.   SOS Staffing did not retain control of Pillon's work activities while hired out as a temporary worker for Schlumberger and is not, therefore, vicariously liable for Field's injuries.