2006 WY 99

**Corrine L. SHEAFFER, Appellant (Applicant),**

v.

**STATE of Wyoming, ex rel., UNIVERSITY OF WYOMING; University of Wyoming Campus Police Department, through the Custodians of Records, Appellees (Respondents).**

No. 05–211.

Supreme Court of Wyoming.

Aug. 9, 2006.

Representing Appellant: Bill G. Hibbler, Cheyenne, Wyoming.

Representing Appellees: Susan C. Weidel, Senior Assistant General Counsel & Special Assistant Attorney General, University of Wyoming, Laramie, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL,* KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Corrine Sheaffer (Sheaffer) appeals a determination by the district court that a surreptitious tape recording of a University of Wyoming (the University) committee meeting was not a public record under the Wyoming Public Records Act (WPRA), Wyo. Stat. Ann. §§ 16–4–201 *et seq.* We conclude that the tape is a public record and remand for further proceedings to determine whether any exemptions apply or, if disclosure is appropriate, whether any portions of the tape are subject to redaction.

## ISSUES

[¶ 2] Sheaffer sets out three issues in her brief:

I. Did the district court err in denying inspection of the tape recording, by finding it is not a "public record," as defined by Wyoming Statute § 16–4–201?

II. If the tape recording is a "public record," as defined by Wyoming Statute § 16–4–201, should inspection be denied for any exemption asserted pursuant to Wyoming Statute § 16–4–203?

III. If the court orders inspection of the tape recording, should it be redacted?

The University's statements of the issues do not differ substantively from Schaeffer's.

## FACTS

[¶ 3] In 2003, Sheaffer was employed as the University's manager of Transportation and Parking Services. In November, a subordinate secreted a recorder to tape a meeting of the University's Traffic Appeals Committee.[1] The tape subsequently came into the possession of the director of the University's Auxiliary Services and the matter was

---

* Chief Justice at time of oral argument.

1. The University and the subordinate contend that Sheaffer ordered the taping; Sheaffer denies that, claiming that the subordinate acted on his own initiative. Our determination that the tape is a public record is equally applicable under either scenario.

reported to the University police. After an investigation, the University concluded that Sheaffer's actions constituted "serious misconduct" and her employment was terminated. No criminal charges resulted from the investigation.

[¶ 4] In September of 2004, after her termination, Sheaffer requested access to the tape. The University denied the request on the grounds that the tape recording was not an official record [2] of the University, and that it was otherwise exempt from disclosure under Wyo. Stat. Ann. §§ 16–4–203(b)(i) [3] and (d)(xi). [4] Sheaffer responded by filing an *Application for Order to Show Cause Why Inspection of Public Record Denied* in the district court. After a hearing, the district court upheld the University's determination that the tape was not a public record:

> This Court disagrees with Sheaffer. It is clear that the surreptitious recording is not, in fact, a public record. And, despite what she contends, the purpose for which the tape was made is, in fact, important. The "public record" definition requires that such records be made by the State of Wyoming (or its agencies) or "received by them in connection with the transaction of public business." Wyo. Stat. § 16–4–201(a)(v). Here, the Appeals Committee does not record or keep minutes of its proceedings. [footnote omitted] The tape was made by an individual who, as it happened, was employed by the University,

but his action was neither part of his official duties or undertaken at the behest of the Committee. The fact that the tape was made by someone who happened to be a public employee does not, in and of itself, make that tape a public record. Although Sheaffer asserts that the meetings are held in an area where University employees and others can "overhear" the proceedings and the Albany County Attorney's Office declined prosecution because the Appeal Committee had no expectation of privacy when conducting its meetings, those facts do not create a public record. The tape was not a record kept (or received) by the University in connection with the transaction of public business; it was made clandestinely by Kunkel, whether at Sheaffer's request or not. In sum, the recorded tape does not fall within the realm of "public records" as intended by the Act. *See Laramie River Conservation Council v. Dinger*, 567 P.2d 731 (Wyo.1977). Disclosure pursuant to a request submitted pursuant to the Public Records Act is, therefore, not required.

Sheaffer appeals the district court's order.

## STANDARD OF REVIEW

[¶ 5] The determination of whether or not the tape is a public record requires us to construe various provisions of the WPRA.

2. What constitutes a public record is defined by Wyo. Stat. Ann. § 16–4–201(a)(v) (LexisNexis 2005):

(v) "Public records" when not otherwise specified includes the original and copies of any paper, correspondence, form, book, photograph, photostat, film, microfilm, sound recording, map drawing or other document, regardless of physical form or characteristics that have been made by the state of Wyoming and any counties, municipalities and political subdivisions thereof and by any agencies of the state, counties, municipalities and political subdivisions thereof, or received by them in connection with the transaction of public business, except those privileged or confidential by law[.]

3. Wyo. Stat. Ann. § 16–4–203(b)(i) (LexisNexis 2005):

(b) The custodian may deny the right of inspection of the following records, unless otherwise provided by law, on the ground that dis-

closure to the applicant would be contrary to the public interest:

(i) Records of investigations conducted by, or of intelligence information or security procedures of, any sheriff, county attorney, city attorney, the attorney general, the state auditor, police department or any investigatory files compiled for any other law enforcement or prosecution purposes[.]

4. Wyo. Stat. Ann. § 16–4–203(d)(xi) (LexisNexis 2005):

(d) The custodian shall deny the right of inspection of the following records, unless otherwise provided by law:

. . . .

(xi) Records or information compiled solely for purposes of investigating violations of, and enforcing, internal personnel rules or personnel policies the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]

In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is *de novo.* We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in *pari materia.*

*Allsop v. Cheyenne Newspapers, Inc.,* 2002 WY 22, ¶ 9, 39 P.3d 1092, 1095 (Wyo.2002) (citing *Wyoming Board of Outfitters and Professional Guides v. Clark,* 2001 WY 78, ¶ 12, 30 P.3d 36, 41 (Wyo.2001)).

[¶ 6] The WPRA permits any person to access public records: "All public records shall be open for inspection by any person at reasonable times, except as provided in this act or as otherwise provided by law ... [.]" Wyo. Stat. Ann. § 16–4–202(a); *Houghton v. Franscell,* 870 P.2d 1050, 1052 (Wyo.1994).

▆▆ The policy underlying the WPRA is on disclosure:

The object of the public records act is disclosure, not secrecy, and we therefore interpret the act liberally in favor of disclosure, construing all exemptions narrowly. *Sheridan Newspapers, Inc. v. City of Sheridan,* 660 P.2d 785, 793, 794 (Wyo.1983); and *Laramie River Conservation Council v. Dinger,* 567 P.2d 731, 733 (Wyo.1977). Legislation requiring disclosure of information is considered remedial, and

[r]emedial statutes are liberally construed to suppress the evil and advance the remedy. The policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established.

Norman J. Singer, 3 Sutherland Statutory Construction § 60.01 at 147 (5th Ed.1992). *See also Heltzel v. Thomas,* 516 N.E.2d 103, 106 (Ind.App.1987). The remedial purpose of the public records act is to permit access to public records unless disclosure would inflict irreparable harm contrary to protected rights.

The courts, legislature, administrative agencies, and the state, county and municipal governments should be ever mindful that theirs is public business and the public has a right to know how its servants are conducting its business.... The citizenry must be permitted to hear and see what public officers and their employees say and do whenever the imparting of this knowledge does not run contrary to the rights of those otherwise protected in a way that would result in disclosure having the effect of inflicting such irreparable harm as is recognized at law.

*Sheridan Newspapers,* 660 P.2d at 791.

*Houghton,* 870 P.2d at 1052; see also *Allsop,* at ¶¶ 10–13, 39 P.3d at 1095–96; *Wyoming Department of Transportation v. International Union of Operating Engineers Local Union 800,* 908 P.2d 970, 973 (Wyo.1995).

## DISCUSSION

▆▆ [¶ 7] The question we must answer in determining whether or not the tape was public record is if it was "made by the ... [University] ... or received by [it] in connection with the transaction of public business ... [.]" Wyo. Stat. Ann. § 16–4–201(a)(v). The district court concluded below, and the University argues here, that the tape was not *"made"* by the University in connection with the transaction of public business because it was not an action authorized by the employment of Sheaffer or her subordinate. We need not make that determination today because we conclude that the tape at issue here was *"received* ... in connection with the transaction of public business."

[¶ 8] The tape was received into the possession of the director of the University's Auxiliary Services in connection with the investigation into Sheaffer's conduct. "Received" is not defined in the WPRA. Turning to the ordinary and obvious meaning of the word, it is apparent that the tape was "received" by the University:

To acquire or take (something given, offered, or transmitted): get ... To take in or hold.

Webster's II New College Dictionary 946 (3rd ed.2005). The critical inquiry then is whether or not the University received the tape "in connection with the transaction of public business." The University contends that it was not, because the tape was retrieved as evidence in connection with an internal personnel, and an external, criminal investigation,[5] and Sheaffer's misconduct could not "lead to the creation of a legitimate public record." In contrast, Sheaffer argues that the University taking possession of the tape in connection with the internal personnel investigation made the tape a public record. We agree with Sheaffer.

[¶ 9] While the term "public business" is not defined within the WPRA, the ordinary and obvious meaning of it is sufficiently broad enough to encompass an investigation into misconduct by a public employee in the performance of his or her duties:

> The public has an interest in learning about the operation and functioning of a public agency ... and the work-related conduct of public employees; in gaining information to evaluate the expenditure of public funds and the functioning of a public institution or agency; in having information openly available to them so that they can be confident in the operation of their government; and in [e]nsuring that both the activity of public employees suspected of wrongdoing and the conduct of those public employees who investigate the suspects is open to public scrutiny.

*Fincher v. State*, 231 Ga.App. 49, 497 S.E.2d 632, 636 (1998). Other states have found the records of investigations to be public under their particular statutory scheme: *Griffin v. City of Knoxville*, 821 S.W.2d 921 (Tenn. 1991) (Handwritten notes of state representative who committed suicide were "received in connection with the transaction of official

business" when seized as part of investigation into the death and were, therefore, public records subject to inspection.); *Bakersfield City School District v. The Superior Court of Kern County*, 118 Cal.App.4th 1041, 13 Cal.Rptr.3d 517 (Cal.App. 5th App. Dist. 2004) (Complaint against teacher alleging sexual misconduct was a public record open for disclosure because public employee's right to privacy must give way to public's right to know.); *Irvin v. Macon Telegraph Pub. Co.*, 253 Ga. 43, 316 S.E.2d 449 (Ga. 1984) (Records of an investigation by state Department of Agriculture into allegations of civil and criminal misconduct by department employees were public records.); Andrea G. Nadel, Annotation, *What Constitutes Personal Matters Exempt from Disclosure by Invasion of Privacy Exemption Under State Freedom of Information Act*, 26 A.L.R.4th 666 § 3 (1983 & 2005 Supp.) (collecting cases); Andrea G. Nadel, Annotation, *What Are "Records" of Agency Which Must Be Made Available Under State Freedom of Information Act*, 27 A.L.R.4th 680 § 3; *cf.* § 4 (1984 & 2005 Supp) (collecting cases).

[¶ 10] A review of the language of the WPRA supports the conclusion that the tape is a public record. The WPRA enumerates exemptions from disclosure for certain public records. Wyo. Stat. Ann. § 16–4–203. Subsection (a) provides that the "custodian of any public records shall allow any person the right of inspection of the records or any portion thereof except on one (1) or more of the following grounds or as provided in subsection (b) or (d) of this section[.]" Subsection (d) contains a provision concerning records relating to investigations of violations of internal personnel rules or policies:

> Records or information compiled solely for purposes of investigating violations of, and enforcing, internal personnel rules or personnel policies the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]

---

5. As briefly noted in the factual recitation, no criminal charges resulted from the investigation. The Albany County & Prosecuting Attorney's Office concluded that because the Traffic Appeals Committee meeting was held in an area accessible by the public and the Committee took no steps to restrict access the circumstances did not

"justify the expectation that the communication [was] not subject to interception." See Wyo. Stat. Ann. §§ 7–3–701 and 7–3–702 (LexisNexis 2005). While the record is not entirely clear, it appears that the tape remained (and continues to remain) in the University's possession throughout all of the investigations.

Wyo. Stat. Ann. § 16–4–203(d)(xi). The clear implication of this subsection is that records not within any of the enumerated exemptions are public records as there would be no need for an exemption if the records of an investigation of violations of internal personnel rules or policies were not initially construed to be public records. It is also consistent with, and furthers, the WPRA's policy of public disclosure. The University's position would render the need for this exemption irrelevant. We will not read statutes in a manner that would render any portion of them superfluous. *SOS Staffing Services, Inc. v. Fields,* 2002 WY 141, ¶ 11, 54 P.3d 761, 764 (Wyo.2002).

 [¶ 11] The University responds that the content of the tape is irrelevant in that the misconduct was the act of taping itself and, therefore, the contents of the tape should not be open to public inspection. The University cites no authority to support its position. The WPRA contains no language that could be construed to support the distinction the University attempts to draw. Under the WPRA, a public record is either open to inspection by the public or it is exempt. The University would effectively have this Court carve out a judicially created exemption. That would be contrary to the remedial purposes of the WPRA and we decline to do so.

[¶ 12] Since the tape was received by a governmental entity covered by the WPRA "in connection with the transaction of public business"—an investigation into alleged misconduct by a public employee—it is a public record subject to inspection by any member of the public absent the application of any statutory exemption.[6]

 [¶ 13] As noted, finding the tape to be a public record necessitates a second inquiry: whether any exemption applies that would allow the record custodian to deny the public the right of inspection. See Wyo.

Stat. Ann. § 16–4–203. Exemptions are construed narrowly. *Allsop,* ¶ 10, 39 P.3d at 1095; and *Houghton,* 870 P.2d at 1052. While the district court did not consider the applicability of any exemptions, the parties have argued the matter in their briefs, so we will succinctly address it in the interests of judicial efficiency.

 [¶ 14] The University suggests that two exemptions apply to the tape. The first is § 16–4–203(d)(xi), the language of which we have already set out above. The exemption allows the record custodian to deny public inspection if the record or information was compiled *solely* for purposes of investigating violations or enforcing internal personnel rules or policies, the disclosure of which would clearly constitute an unwarranted invasion of privacy. In this context, the word "solely" is equivalent to "exclusively." See Webster's New College Dictionary 1075 (3rd ed.2005). The tape was not compiled "solely" or "exclusively" for purposes of the investigation; the tape pre-existed the investigation. The exemption simply is not applicable under these circumstances.

[¶ 15] The second exemption urged by the University is Wyo. Stat. Ann. § 16–4–203(g):

If, in the opinion of the official custodian of any public record, disclosure of the contents of the record would do substantial injury to the public interest, notwithstanding the fact that the record might otherwise be available to public inspection, he may apply to the district court of the district in which the record is located for an order permitting him to restrict disclosure. After hearing, the court may issue an order upon a finding that disclosure would cause substantial injury to the public interest. The person seeking permission to examine the record shall have notice of the hearing served upon him in the manner provided for service of process by the Wy-

---

6. Any claim that categorizes records received in connection with an investigation of misconduct by a public employee as public records would "chill" or inhibit a governmental entity from fully investigating allegations of employee misconduct is not well taken. "Public scrutiny [can] never be a pretext for nonfeasance, misfeasance, or malfeasance." *Allsop,* ¶ 26, 39 P.3d at 1100,

n. 6. Further, the WPRA provides an exemption safeguarding against disclosure of any "clearly unwarranted invasion of personal privacy." § 16–4–203(d)(xi). We also note that the investigation at issue here has been completed and is closed. A request to view records from an open, on-going investigation may present different considerations under the WPRA.

oming Rules of Civil Procedure and has the right to appear and be heard.

It is premature for us to consider any argument under this exemption. There is nothing in the record indicating that the University filed an application or that service was effectuated pursuant to the subsection. Of course, there was also no hearing held nor any findings made by the district court since it never considered the applicability of any exemptions having found that the tape was not a public record. Upon remand, the University is free to pursue exemption of the tape from disclosure pursuant to this subsection if it desires.

[¶ 16] As a final matter, the parties raise the issue of redaction. We have recognized that redaction is an appropriate remedy when portions of an otherwise disclosable public record may be subject to an exemption. *Allsop,* ¶ 30, 39 P.3d at 1101. Sheaffer argues that since the University did not present any evidence supporting redaction, that the remedy should not be available in this case. To this point in the proceedings the question of redaction has been premature, as there has been no evidentiary hearing. The district court held that the tape was not a public record. The University has never had the opportunity to present evidence regarding redaction. Furthermore, the need to present such evidence was moot given the district court's holding. Sheaffer's argument is not well taken. If the question of redaction becomes relevant during the proceedings on remand, the district court may consider the remedy to the extent raised by any party.

## CONCLUSION

[¶ 17] The tape recording is a public record under the provisions of the WPRA. The district court's order is reversed and the matter is remanded for further proceedings.