# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 37

OCTOBER TERM, A.D. 2013

*March 12, 2014*

POWDER RIVER BASIN RESOURCE
COUNCIL, WYOMING OUTDOOR
COUNCIL, EARTHWORKS, and
CENTER FOR EFFECTIVE
GOVERNMENT (formerly OMB
WATCH),

Appellants
(Petitioners),

v.

WYOMING OIL AND GAS                         S-13-0120
CONSERVATION COMMISSION,

Appellee
(Respondent),

and

HALLIBURTON ENERGY
SERVICES, INC.,

Appellee
(Intervenor).

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellants:*
    Timothy J. Preso and Laura D. Beaton* of Earthjustice, Bozeman, Montana; Shannon Anderson, Sheridan, Wyoming. Argument by Mr. Preso.

*Representing Appellee Wyoming Oil and Gas Conservation Commission:*
    Peter K. Michael, Interim Attorney General; Eric A. Easton, Senior Assistant Attorney General. Argument by Mr. Easton.

*Representing Appellee Halliburton Energy Services, Inc.:*
    Steven L. Leifer of Baker Botts L.L.P., Washington, D.C.; John A. Masterson and Alaina M. Stedillie of Lewis Roca Rothgerber, LLP, Casper, Wyoming. Argument by Mr. Leifer.

*Before KITE, C.J., and HILL, VOIGT,[†] BURKE, and DAVIS, JJ.*

*\* Order Allowing Withdrawal of Counsel Laura D. Beaton filed September 25, 2013*
*[†] Justice Voigt retired effective January 3, 2014*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellants Powder River Basin Resource Council, Wyoming Outdoor Council, Earthworks, and Center for Effective Government appeal from a district court order affirming the Wyoming Oil and Gas Conservation Commission (Commission) Supervisor's denial of a public records request.  Recently-adopted regulations require companies engaged in hydraulic fracturing to disclose the chemical compounds used to the Commission.  Appellants sought disclosure of the chemicals in several companies' hydraulic fracturing products from the Commission, but the Supervisor, custodian of the records, found that information to be exempt from public disclosure as trade secrets under the Wyoming Public Records Act (WPRA).  Rather than simply requesting that the district court issue an order to show cause which would require the Supervisor to justify his decision at an evidentiary hearing under the WPRA, Appellants sought review of his decision under the Wyoming Administrative Procedure Act (APA).  The district court affirmed the Supervisor's decision, finding his decision to be reasonable and legally correct.

[¶2]    We hold that Appellants were required to follow the procedures set forth in the WPRA, which they did not do.  The WPRA requires the district court to independently determine whether information must be disclosed or not, rather than to review a decision of the Supervisor as an administrative decision.

[¶3]    This appeal also raises the question of how trade secrets are defined under the WPRA, a question that can be answered as a matter of law on this record, and one we find to be appropriate to address in the interest of judicial economy.  We decide that the Supervisor and the courts should apply the definition developed in federal case law under the Freedom of Information Act (FOIA).  We decline to determine whether individual chemical ingredients can be trade secrets because that is not solely a question of law and it cannot be decided on the record before us. We reverse and remand for further proceedings consistent with this opinion.

**ISSUE**

[¶4]    Appellants present a single issue on appeal:

> Whether the Supervisor of the Wyoming Oil and Gas Conservation Commission acted arbitrarily and unlawfully in denying Appellants' request for public records documenting the identities of chemicals used in hydraulic fracturing operations in the state.

[¶5]    Although varying in tone and tint, the Commission and Halliburton Energy Services, Inc. (Halliburton) restate essentially the same issue, asking us to apply the

1

APA. However, the denial of Appellants' WPRA request does not fall under the APA. We therefore restate the issue to be determined as follows:

> Did the district court err in determining that the information sought in Appellants' public records request concerning the identity of certain chemicals used in hydraulic fracturing fluids are exempt from public disclosure as trade secrets under the WPRA?

## FACTS

[¶6] In 2010, in response to concerns about the effect of hydraulic fracturing on groundwater in the state, the Commission amended its rules and regulations to require companies engaged in fracking to disclose the identity of chemicals used for well stimulation. Rules, Wyo. Oil & Gas Conservation Comm'n, Ch. 1-5 (2010). The amended rules were intended to provide the Commission with information about the chemicals and to make fracturing activities more transparent to the public. They mandate that operators submit "[t]he chemical additives, compounds and concentrations or rates proposed to be mixed . . . ." to the Commission before initiating and after completing any well stimulation. *Id*. at Ch. 3 § 45(d) (emphasis in original). Companies engaged in fracturing must include the type of chemical (the ingredient's purpose), the chemical compound name, CAS number, and the concentration of each chemical. *Id.* A CAS number is a unique identifier assigned to every chemical described in public scientific literature. A person who knows the CAS number for a chemical can identify it by looking it up on the Chemical Abstracts Service website.[1]

[¶7] The Commission adopted rules intended to balance its need for the information, the public's interest in identifying chemicals which may find their way into groundwater, and the industry's need to protect proprietary information in order to maintain competitive advantage. The rules provide the following mechanism for determining whether information provided to the Commission will be deemed confidential and not available to the public:

> [B]y written letter to the Supervisor justifying and documenting the nature and extent of the proprietary information, confidentiality protection shall be provided consistent with WYO. STAT. ANN. § 16-4-203(d)(v) of the Wyoming Public Records Act for the following records: "trade secrets, privileged information and confidential

---

[1] *See* National Institute of Standards and Technology, *Standard Reference Data*, *available at* http://webbook.nist.gov/chemistry/cas-ser.html; *see also* FracFocus, *available at* http://fracfocus.org.

2

commercial, financial, geological or geophysical data furnished by or obtained from any person."

*Rules*, *supra*, Ch. 3 § 45(f).

[¶8]   After the above rules were promulgated, the Supervisor[2] established a more specific policy and procedure for reviewing trade secret protection requests submitted by operators.  Operators are required to submit written trade secret protection requests with two attachments; the first providing justification for deeming all or part of the formulation of a product to be a trade secret, and the second containing the product name, the product type, the CAS number for each chemical component of the product, and the concentration of the chemicals in the product.  If the Supervisor finds the information to be a trade secret, the second attachment is detached from the letter requesting trade secret status and protected from public disclosure by the Supervisor, while other information not entitled to trade secret status is published on the Commission's website and thus made available to the public.

[¶9]   On November 15, 2011, Appellants submitted a public records request seeking chemical information not publically available from the Commission.  Relying upon the WPRA, the Appellants requested:

> 1) All records, including electronic records, WOGCC has in its possession that list or identify the type, chemical compound name, and/or Chemical Abstract Services (CAS) number of chemicals or other constituents that have been or will be injected through hydraulic fracturing or other well stimulation operations in Wyoming since September 15, 2010, by the following companies and that have not been disclosed on the WOGCC website: CHEM EOR; CESI Chemical, Inc.; NALCO Company; CalFrac Well Services; Multi-Chem Group; Baker Hughes; Kroff Well Service; Halliburton Energy; BJ Services Company; Core Lab Reservoir Optimization; SNF, Inc.; Spectrum Tracer Services; Water Mark Technologies; and Weatherford.  In responding to this request, please include records provided to WOGCC by any subsidiary or agent companies.

---

[2] The Wyoming Legislature recently amended the qualifications for the Commission Supervisor position, which now requires a person to be a "qualified petroleum engineer or petroleum geologist with at least ten (10) years of experience in his respective field of expertise . . . ." 2013 Wyo. Sess. Laws, Ch. 4, § 1.  Prior to the amendment, the qualifications for the position were for a person to be a "qualified and registered professional petroleum engineer or petroleum geologist . . . ."  Wyo. Stat. Ann. § 30-5-108 (LexisNexis 2011) (amended 2013).

2) All records, including correspondence, memoranda, reports, and WOGCC staff notes that are not otherwise available on the WOGCC website that discuss WOGCC's determinations regarding applicability of public disclosure exemptions, including trade secret or confidential business information exemptions, for the companies listed above.

[¶10] The Supervisor responded to this request on January 10, 2012, referring Appellants to information on the Commission website and providing copies of, *inter alia*, correspondence relating to the confidentiality requests submitted by various operators. The Supervisor redacted certain information from the documents, including the identity of chemicals he found to be exempt from disclosure as trade secrets under the WPRA, Wyo. Stat. Ann. § 16-4-203(d). The redacted information includes specific chemical compound names, chemical compound types, CAS numbers, and concentrations for each ingredient in a specific formula.

[¶11] The Supervisor's response complied with the provisions of Wyo. Stat. Ann. § 16-4-203(e), which requires justification for his refusal to disclose documents under the trade secret exception to the WPRA. He acknowledged that this Court had not addressed the meaning of trade secrets in the context of the WPRA, but relied upon the definition of trade secrets in Wyoming's Uniform Trade Secrets Act, Wyo. Stat. Ann. § 40-24-101(a)(iv). The Supervisor also described the multi-part test he applied in making determinations as to trade secret protections:

> Other states have addressed similar public records exceptions. The state of New York addressed the disclosure of confidential information/trade secrets, and adopted a multi-part requirement for consideration as [a] trade secret. The Oil and Gas Conservation Commission has utilized this as a model to evaluate requests for trade secret status:
>
> a. The extent to which the information is known outside the business of the person submitting the information;
>
> b. The extent to which it is known by the person's employees and other[s] involved in the business;
>
> c. The extent of measures taken by the person to guard the secrecy of the information;
>
> d. The value of the information to the person and his competitors;

4

> e. The amount of effort or money expended by the person in developing the information, and;
>
> f. The ease or difficulty with which the information could be properly acquired or duplicated by others.

The response concluded by explaining the initial exemption process he employed, stating that "[t]he application for and justification for confidential status/trade secret status, and the submitted Chemical Abstract Services [CAS] numbers are not considered confidential" and such information is "filed with other public documents and have been posted on the [Commission] website with other well information." However, according to the Appellants, some of the documents disclosed by the Supervisor or available on the Commission's website omitted or redacted the CAS numbers.

[¶12]  The Supervisor's response prompted Appellants to submit a second public records request specifically seeking disclosure of CAS numbers for individual chemical ingredients associated with their prior request on January 12, 2012.  Eight days later, the Supervisor responded to this second request, standing by his initial determination and clarifying "that certain records, including the CAS number, are withheld from public disclosure as they constitute 'Trade Secrets' and as such are exempt from disclosure under the Wyoming Public Records Act."

[¶13]  Undeterred, Appellants submitted a third WPRA request on February 8, 2012.  In it, they urged the Supervisor to reconsider his previous decision to withhold certain information from public disclosure as trade secrets, asserting "that mere identification of names and CAS numbers of hydraulic fracturing chemicals is not a trade secret pursuant to Wyoming's Public Records Act."  Appellants also supplied information that they felt provided additional guidance regarding the breadth of trade secret exemptions from disclosure, including: (1) a report from a chemical analytical laboratory specializing in deformulation, or reverse engineering, of products, discussing the information necessary for or useful to deformulating products; (2) a report discussing the unreliability of material safety data sheets for identifying human health hazards; (3) a 2010 notice in the Federal Register from the U.S. Environmental Protection Agency regarding review of confidentiality claims and disclosure of chemical identities; and (4) an article discussing public health concerns related to hydraulic fracturing.

[¶14]  The Supervisor declined to change his position by letter dated February 24, 2012.  He explained that he believed this information to be exempt under the trade secret protections provided by the WPRA because "[t]he protection from and prevention of reverse engineering through deformulation of chemical compounds is the protection that providers of chemical compounds used in well stimulation are seeking" and that "[d]eformulation or reverse engineering of chemical compounds would negatively impact those chemical providers."

[¶15] On March 23, 2012, Appellants filed a *Petition for Review of Administrative Action; Complaint for Declaratory Relief*[3] pursuant to the APA, claiming that the Supervisor's refusal to disclose indentifying information of certain chemicals was arbitrary, capricious, an abuse of discretion, and not in accordance with the law. Appellants challenged the Supervisor's decision not to disclose chemical information regarding thirty-eight approved trade secret submissions by various operators, arguing that these approvals were based upon requests which were unlawfully broad or not sufficiently justified. Although they sought relief exclusively through the APA, in their prayer for relief Appellants asked the district court to compel the Supervisor to show cause why its partial denial of their request for access to its records was lawful. However, no order to show cause was ever issued, and as discussed below, the district court never held a show-cause evidentiary hearing.

[¶16] Halliburton intervened in the action, and all parties entered into a stipulation concerning materials they relied upon to support their position. The stipulated record consists of information concerning (1) sixty-five requests for trade secret status approved by the Supervisor, all of which are posted on the Commission's website, and (2) various correspondence ranging from general questions from the public concerning the Commission's 2010 rule amendments to specific inquires from companies how to request trade secret exemptions for certain information concerning its hydraulic fracturing products.

[¶17] Appellants and Halliburton filed cross-motions for summary judgment based on the information contained in the stipulation. After holding a hearing on the motions, the Court granted summary judgment[4] in favor of Appellees. It identified a single issue for review:

> Did the Wyoming Oil and Gas Conservation Commission Supervisor act arbitrarily and capriciously, or otherwise contrary to law when he found that individual ingredients of hydraulic fracturing formulas constituted trade secrets under the WOGCC public disclosure rule and the Wyoming Public

---

[3] Although the *Petition's* caption says that it is also a complaint for declaratory relief, Appellants alleged that the district court had jurisdiction only under the APA and W.R.A.P. 12. Nowhere in the complaint did Appellants actually invoke or refer to the Uniform Declaratory Judgments Act, Wyo. Stat. Ann, § 1-37-101 to -115.

[4] We are somewhat nonplussed by the use of the summary judgment procedure identified in Wyoming Rule of Civil Procedure 56 given the fact that the matter was treated as an administrative review. Review of administrative decisions by the district courts is governed by the Wyoming Rules of Appellate Procedure. W.R.A.P. 12.01. There is no summary judgment procedure in the appellate rules. It is clear that the district court did in fact act in the capacity of a reviewing court, rather than a trial court, an issue which we address below.

Records Act, and denied the Petitioners the right to inspect those records?

To answer this question, the district court examined the WPRA, our precedent regarding the same, and the definition of trade secrets within the WPRA. In analyzing the term "trade secret" in the WPRA, the district court referred to three different definitions—the definition in the FOIA, the definition in the Restatement (Third) of Unfair Competition § 39, and the Uniform Trade Secrets Act definition (Wyo. Stat. Ann. § 40-24-101). The court found that hydraulic fracturing chemical identity information could qualify as a trade secret under all three definitions. After considering the issue, it applied the APA, finding that "the WOGCC Supervisor acted reasonably when he established a policy for evaluating trade secret protection requests and that policy is in accordance with the [WPRA]" and that Appellants "failed to demonstrate that the Supervisor's decisions to grant trade secret protection requests were arbitrary, capricious, or not in accordance with the law." It is apparent from the record and the decision that the district court considered its role to be to review the Supervisor's decision as an administrative decision, rather than to engage in an independent determination of whether the information withheld was entitled to trade secret protection under the WPRA.

[¶18] Appellants timely perfected this appeal.

## STANDARD OF REVIEW

[¶19] We must first determine whether the district court had authority to evaluate the Supervisor's decision using an administrative standard of review under Wyoming's appellate rules, or whether it should have used the procedures specified in the Wyoming Public Records Act. We must also construe the WPRA's definition of trade secrets. Both of these questions involve statutory interpretation.

> In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is *de novo*. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*. When a statute is sufficiently clear and unambiguous, we give effect

7

to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Wyoming Board of Outfitters and Professional Guides v. Clark*, 2001 WY 78, ¶ 12, 30 P.3d 36, [41] (Wyo. 2001); *Murphy v. State Canvassing Board*, 12 P.3d 677, 679 (Wyo. 2000). Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation. *Billis v. State*, 800 P.2d 401, 413 (Wyo. 1990) (citing *McGuire v. McGuire*, 608 P.2d 1278, 1283 (Wyo. 1980)).

. . .

Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and obvious meaning.

*Mountain Cement Co. v. S. of Laramie Water & Sewer Dist.*, 2011 WY 81, ¶ 13, 255 P.3d 881, 885-86 (Wyo. 2011) (quoting *BP Am. Prod. Co. v. Dep't of Revenue*, 2005 WY 60, ¶ 15, 112 P.3d 596, 604 (Wyo. 2005)) (some citations omitted).

**DISCUSSION**

*Procedural Issues*

[¶20] Wyoming Statute § 16-4-201(a)(v) defines "public records" as "when not otherwise specified includes the original and copies of any paper, correspondence, form, book, photograph, photostat, film, microfilm, sound recording, map drawing or other document, regardless of physical form or characteristics that have been made by the state of Wyoming and any counties, municipalities and political subdivisions thereof and by any agencies of the state, counties, municipalities and political subdivisions thereof, or received by them in connection with the transaction of public business, except those privileged or confidential by law." Wyo. Stat. Ann. § 16-4-201(a)(v) (LexisNexis 2011).[5]  The parties agree that the fracturing chemical information sought must be

---

[5] We note that the definition was amended effective July 1, 2012, which now defines "public records" as "when not otherwise specified includes any information in a physical form created, accepted, or obtained by the state or any agency, institution or political subdivision of the state in furtherance of its official function and transaction of public business which is not privileged or confidential by law.  Without

available for public inspection unless it is privileged or confidential by law. They disagree as to whether it is privileged or confidential.

[¶21] The WPRA requires custodians to deny public requests for inspection of records they deem to be trade secrets. Wyo. Stat. Ann. § 16-4-203(d)(v) (LexisNexis 2013). "If the custodian denies access to any public record, the applicant may request a written statement of the grounds for the denial," which "shall cite the law or regulation under which access is denied and shall be furnished to the applicant." Wyo. Stat. Ann. § 16-4-203(e) (LexisNexis 2013); *see Sheridan Newspapers, Inc. v. City of Sheridan*, 660 P.2d 785, 788-89 (Wyo. 1983).

[¶22] The legislature anticipated that records custodians and the public would at times disagree as to whether information was subject to inspection under the Act, and specified a procedure to resolve those conflicts in the district court in § 16-4-203(f):

> Any person denied the right to inspect any record covered by this act may apply to the district court of the district wherein the record is found for any [sic] order directing the custodian of the record to show cause why he should not permit the inspection of the record.

Wyo. Stat. Ann. § 16-4-203(f) (LexisNexis 2013).

[¶23] Any person denied the right of access to public records can therefore apply to the district court for an order directing the custodian of the record to show cause[6] why inspection should not be permitted. *Id.*; *see Freudenthal* v. *Cheyenne Newspapers, Inc.*, 2010 WY 80, ¶ 8, 233 P.3d 933, 935 (Wyo. 2010); *Sheaffer v. Univ. of Wyoming,* 2006 WY 99, ¶ 4, 139 P.3d 468, 470 (Wyo. 2006); *Allsop v. Cheyenne Newspapers*, *Inc.*, 2002 WY 22, ¶ 29, 39 P.3d 1092, 1101 (Wyo. 2002); *Sheridan Newspapers*, 660 P.2d at 788-89.

[¶24] "The role of the district court [is] to examine [the disputed information], all of the other materials in the record and the applicable law, and then make a judgment as to whether [the custodian] was correct in his conclusion." *Allsop,* ¶ 29, 39 P.3d. at 1101.

---

limiting the foregoing, the term "public records" includes any written communication or other information, whether in paper, electronic, or other physical form, received by the state or any agency, institution or political subdivision of the state in furtherance of the transaction of public business of the state or agency, institution or political subdivision of the state, whether at a meeting or outside a meeting." Wyo. Stat. Ann. § 16-4-201(a)(v) (LexisNexis 2013).

[6] An order to show cause is "[a]n order directing a party to appear in court and explain why the party took (or failed to take) some action or why the court should or should not grant some relief." Black's Law Dictionary 1207 (9th ed. 2009).

"It [is] also incumbent upon the district court to employ logic and reason in that process." *Id.* In determining whether the custodian has met his burden, a show cause proceeding provides the district court with a variety of tools to make evidentiary determinations as to each piece of information in dispute, including oral testimony by lay and expert witnesses; detailed affidavits; in camera review of the contested records and related sensitive information; closed proceedings and sealed submissions to ensure protection of the same; or such other alternative procedures it deems necessary to develop an adequate factual basis to determine whether information is a trade secret under the WPRA. *See Freudenthal*, ¶ 8, 233 P.3d at 935; *Allsop*, ¶ 30, 39 P.3d at 1101; *cf. Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 942 (10th Cir. 1990).

[¶25] If the custodian bears his burden of showing that an exemption applies to the record sought, that is the end of the judicial inquiry. *See Allsop*, ¶ 33, 39 P.3d at 1102 (Golden, J., dissenting); *Sheridan Newspapers*, 660 P.2d at 788-89, 799. If the custodian fails to prove that the record is exempt from inspection by the public, the court must order the custodian to allow inspection.

[¶26] The right to judicial review of administrative decisions is entirely statutory. *Albertson's, Inc. v. City of Sheridan*, 2001 WY 98, ¶ 8, 33 P.3d 161, 164 (Wyo. 2001) (citing *Indus. Siting Council v. Chicago & North Western Transp. Co.*, 660 P.2d 776, 778 (Wyo. 1983)). Often that review occurs under the APA. *See* Wyo. Stat. Ann. § 16-3-114(a) (LexisNexis 2013) (agency action or inaction is reviewable under the APA unless there is a statutory or common law provision precluding or limiting review). In the case of the WPRA, the legislature determined that disputes over public access must be decided in the district courts.

[¶27] The wisdom of the legislature's approach is apparent in this case. The record consists of information quite omnifarious, from irrelevant communications with various members of the public to trade secret protection requests from companies, the truth of which cannot be tested in a meaningful way. The record does not tell us what specific information the Supervisor relied upon, or why he did so, and therefore neither this Court nor the district court has a sufficient basis to determine whether he acted properly or not. On the other hand, as the WPRA and cases cited above point out, the district court is in a position to resolve issues of credibility, decide in the first instance whether the documents in question should be public or not, and create a meaningful record for appellate review by using the show-cause procedure in the WPRA.

[¶28] Proceedings to challenge denial of access to documents claimed to be public must follow procedures established by the WPRA, and those are not subject to review under the Administrative Procedures Act. *See Sheaffer*, ¶ 4, 139 P.3d at 470 (after denial of public records request, show cause proceedings followed in accordance with the WPRA). "[T]he legislature has assigned to the courts the task of providing remedies, both to the

public and to government, when issues under the WPRA arise." *Allsop*, ¶ 14, 39 P.3d at 1096.

[¶29]  We will therefore reverse and remand to the district court.  That court will have to determine whether to permit Appellants to amend their pleadings and file appropriate documents to seek an order to show cause, or whether to dismiss the case instead.  In the latter event, Appellants may file a new action with an appropriate request for an order to show cause as contemplated by the WPRA.  The district court is vested with broad discretion to determine whether to allow amendment of pleadings, and we will not interfere with that discretion.  *Voss v. Goodman*, 2009 WY 40, ¶ 14, 203 P.3d 415, 420 (Wyo. 2009).  Regardless of which choice the district court makes, on presentation of an adequate application for an order to show cause, the district court should conduct appropriate proceedings and determine whether the information Appellants seek constitutes trade secrets or not, with the burden of showing that they do upon the custodian (here the Supervisor) and any intervenors.

[¶30]  We understand the difficulty attendant upon holding these proceedings – they must be conducted in such a manner that the information sought to be protected is not disclosed until the court can determine whether it is in fact subject to disclosure.  This may require the use of in camera hearings, sealed files, or even closed hearings, tools that courts customarily use in cases involving alleged trade secrets.  *Cf. Anderson*, 907 F.2d at 942 ("The FOIA allows the district court flexibility in utilizing in camera review of the disputed documents, indexing, oral testimony, detailed affidavits, or alternative procedures . . . ."); Uniform Trade Secrets Act, Wyo. Stat. Ann. § 40-24-105 (LexisNexis 2013) ("[A] court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of the action and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.").

## *Definition of Trade Secrets under the WPRA*

[¶31]  Despite the procedural flaw that leads us to reverse and remand, we are unwilling to cast the district court adrift without some guidance on the standard to be applied in trade secret cases under the WPRA.  This is a general question of law which can be answered without regard to the limited record we have, and it is in the interest of judicial economy to do so.  *See Sterrett Properties, LLC v. Big-D Signature Corp.*, 2013 WY 154, ¶ 16, 314 P.3d 1155, 1159 (Wyo. 2013) (addressing premature issue in the interests of judicial economy).

[¶32] In order to maintain an open and accountable government, the Wyoming legislature enacted the WPRA in 1969.  The Act provides a public right of access to records of the state, its agencies, and local government entities.  Wyo. Stat. Ann. § 16-4-

202(a) (LexisNexis 2013) (all public records "shall be open for inspection by any person at reasonable times"); *Freudenthal*, ¶ 21, 233 P.3d at 939.

[¶33]  The WPRA, like the FOIA, requires that disclosure generally prevail over secrecy. *Sheridan Newspapers,* 660 P.2d at 793 (assigning the same legislative intent to the WPRA as is found characteristic of the FOIA).  "Implementation of that goal is provided by affording a liberal interpretation to the WPRA and construing its exceptions narrowly."  *Allsop*, ¶ 10, 39 P.3d at 1095 (footnote omitted); *see also Laramie Cnty. Sch. Dist. No. One v. Cheyenne Newspapers, Inc*., 2011 WY 55, 250 P.3d 522, 525 (Wyo. 2011); *Houghton v. Franscell*, 870 P.2d 1050, 1052 (Wyo. 1994); *Sheridan Newspapers,* 660 P.2d at 793.

[¶34]  Consistent with the WPRA's overarching purpose, "the custodian, in any exercise of his right to withdraw, must confine his withdrawal discretion to those areas and circumstances prescribed by this Act," employing such discretion on a selective basis rather than through the withdrawal of entire categories of public records. *Allsop*, ¶ 10, 39 P.3d at 1095 (quoting *Sheridan Newspapers*, 660 P.2d at 795-96).  Put another way, the WPRA creates a presumption that the denial of inspection is contrary to public policy, and therefore places "the burden of proof upon the custodian to show that the exercise of his discretion does not run afoul of statutory limitations in any particular instance where custodial withdrawal is effected." *Sheridan Newspapers, Inc*., 660 P.2d at 795-96.  It is through this lens of the legislature's intent in adopting the WPRA that we must interpret the term "trade secrets."

[¶35] Striking a delicate balance between the public's right of access to government records and the protection of proprietary information, the WPRA contains several exemptions from disclosure, which are set forth in §§ 16-4-203(b) & (d).  The exemption pertinent to this appeal states:

> The custodian shall deny the right of inspection of the following records, unless otherwise provided by law:
>
> .   .   .
>
> (v) **Trade secrets**, privileged information and confidential commercial, financial, geological or geophysical data furnished by or obtained from any person[.]

Wyo. Stat. Ann. § 16-4-203(d)(v) (emphasis added).  Although exemption § 203(d)(v) covers several different types of information, our analysis is confined to the term "trade

12

secrets," which has never been subject to interpretation in the forty-plus years of the WPRA's existence.[7]

[¶36] The parties have presented and argued three possible definitions for the term "trade secrets:"

- ***Trade Secret Under the FOIA***: A secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort. *See Anderson*, 907 F.2d at 943-44.

- ***Trade Secret Defined by the Restatement (Third) of Unfair Competition § 39***: Any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret to afford an actual or potential economic advantage over others. *See Briefing.com. v. Jones*, 2006 WY 16, ¶ 8, 126 P.3d 928, 932 (Wyo. 2006).

- ***Trade Secret Defined by the Uniform Trade Secrets Act***: Information, including a formula, pattern, compilation, program device, method, technique or process that: (A) Derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *See* Wyo. Stat. Ann. § 40-24-101(a)(iv) (LexisNexis 2013).

---

[7] The parties invite us to consider whether the disputed information can also be classified as confidential commercial information under the WPRA. However, an opinion on this question would be advisory, because neither the Supervisor nor the district court decided whether the chemical information is also exempt from disclosure as confidential commercial information. As the district court pointed out:

> The Parties spend a great deal of time arguing about confidential commercial information, however, the Supervisor's refusal to disclose the requested individual chemical ingredients relied solely upon a finding that they represented trade secrets, not confidential commercial data. Therefore, the Court's analysis will focus on trade secrets rather than confidential commercial data.

"This Court has said repeatedly that it will not issue advisory opinions," and we decline to depart from our precedent here. *State Bd. of Equalization v. Jackson Hole Ski Corp.*, 745 P.2d 58, 59 (Wyo. 1987) ("Although the question as postulated in this case may be properly before us in the future, to render an opinion here would be to issue an advisory opinion."). If the Supervisor determines the records in dispute are also confidential commercial information, he can deny public records requests on that basis as well and Appellants can apply to the district court for an order to show cause for it to make independent determinations pursuant to our precedent. *See Sublette Cnty. Rural Health Care Dist. v. Miley*, 942 P.2d 1101, 1103 (Wyo. 1997) (analyzing the WPRA exemption for confidential commercial information and adopting the FOIA's federal test).

[¶37] This Court has consistently considered federal precedent interpreting the FOIA in determining issues under the WPRA. *See Miley*, 942 P.2d at 1103 ("Because we have noted the parallel language of our statute and the federal statute, it is appropriate also to examine persuasive authority, particularly pertinent federal cases."); *see also Freudenthal*, ¶¶ 14-18, 25, 31, 233 P.3d at 937-38, 940, 942; *Sheaffer*, ¶ 9, 139 P.3d at 472; *Allsop*, ¶¶ 19-20, 39 P.3d at 1098; *Sheridan Newspapers,* 660 P.2d at 793-95. Consulting federal precedent is especially appropriate in this case, as the philosophy behind the FOIA is consistent with that which led to the adoption of the WPRA, and the FOIA also exempts trade secrets from public disclosure. *Compare* Wyo. Stat. Ann. § 16-4-203(d)(v) *with* 5 U.S.C.A. § 552(b)(4) (exempt from disclosure under the FOIA are "trade secrets and commercial or financial information obtained from a person and privileged or confidential").

[¶38] Having carefully contemplated the purpose of the WPRA, studied relevant case law, and considered competing arguments, we adopt the definition of trade secrets articulated by federal courts under the FOIA. A trade secret in the public records context is "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Anderson,* 907 F.2d at 943-44 (quoting *Public Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280, 1288 (D.C. Cir. 1983)). This "definition requires that there be a 'direct relationship' between the trade secret and the productive process." *Id.*

[¶39] We arrive at this conclusion based largely upon our agreement with the reasoning in *Public Citizen Health Research Group* and *Anderson.* In adopting the narrower definition of trade secrets under the FOIA, the D.C. Circuit rejected the broader and therefore more inclusive definition of trade secrets in the first Restatement of Torts,[8] finding that it is "inconsistent with the language of the FOIA and its underlying policies." *Public Citizen Health Research Group*, 704 F.2d at 1288. The court explained that in the context of public records "trade secret status is reserved for information involving 'the productive process itself, as opposed to collateral matters of business confidentiality such as pricing and sales volume data, sources of supply and customer lists.'" *Id.* at 1287.

[¶40] In *Anderson*, the Tenth Circuit also rejected the broader Restatement of Torts definition, agreeing "with the D.C. Circuit's narrow definition because . . . it is more consistent with the policies behind the FOIA than the broad Restatement definition." *Anderson*, 907 F.2d at 944; *see Herrick v. Garvey*, 298 F.3d 1184, 1190 (10th Cir. 2002). *Anderson* went on to explain that

---

[8] The first Restatement of Torts states that a "[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. . . . A trade secret is a process or device for continuous use in the operation of the business." Restatement of Torts, § 757 cmt. b (1939).

[o]f the arguments put forth by that court in support of its construction, we find most compelling the observation that adoption of the Restatement definition of "trade secrets" would render superfluous the "commercial or financial information" prong of Exemption 4 because there would be no category of information falling within the latter but outside the former. Like the D.C. Circuit, we are reluctant to construe the FOIA in such a manner. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." J. Sutherland, *Statutes and Statutory Construction*, § 46.06 at 104 (C. Sands 4th ed. rev. 1984).

*Anderson*, 907 F.2d. at 944; *see also Herrick v. Garvey*, 200 F. Supp. 2d 1321, 1326 (D. Wyo. 2000), *aff'd*, 298 F.3d 1184 (10th Cir. 2002); Lawrence Kaplan, *What Constitutes "Trade Secrets and Commercial or Financial Information Obtained From Person and Privileged or Confidential," Exempt From Disclosure Under Freedom of Information Act (5 U.S.C.A. § 552(b)(4)) (FOIA)*, 139 A.L.R. Fed. 225 (2011). Applying this narrow definition in the FOIA case before it, the court had no choice but to remand because it could not tell if the district court applied that definition and because sufficient findings were not made for review on appeal. *Anderson*, 907 F.2d at 944.

[¶41] We also find the narrower common law definition more in tune with the policies behind the WPRA than the broader definitions of the Restatement (Third) of Unfair Competition or the Trade Secrets Act. As we have explained, "implementation of that goal [*i.e.*, public disclosure] is provided by affording a liberal interpretation to the [WPRA] and construing its exceptions narrowly." *Miley*, 942 P.2d at 1103 (citing *Sheridan Newspapers*, 660 P.2d at 794). The Restatement and Trade Secrets Act are intended to prevent unfair competition and misappropriation and not to guarantee the public's right to access documents which will reveal the operations of our government. *See* Restatement (Third) of Unfair Competition § 39 cmt. a (1995) ("The protection of trade secrets advances several interests [including] . . . the unfairness inherent in obtaining a competitive advantage through a breach of confidence . . . [and] development of rules protecting trade secrets formed part of a more general attempt to articulate standards of fair competition."); *see also* Wyo. Stat. Ann. § 40-24-107 (LexisNexis 2013); *cf.* Uniform Trade Secrets Act § 1 cmt. (1985) ("One of the broadly stated policies behind trade secret law is 'the maintenance of standards of commercial ethics.' *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974).").[9] Adopting these broader and more

---

[9] The comments to the Restatement (Third) of Unfair Competition further explain:

inclusive definitions of trade secrets would be inconsistent with the language of the WPRA, its fundamental purpose, and our precedent. *Laramie Cnty. Sch. Dist. No. One.*, ¶ 2, 250 P.3d at 524 ("[T]he policy behind the [WPRA] is well settled as one of disclosure, not secrecy, as the legislature of this state has stressed the importance of making available to the public agency records." (internal quotation marks omitted)).

[¶42]  Additionally, our study of the broader definitions reveals that both alternatives to the definition in federal FOIA case law would render meaningless the WPRA's exemption for confidential commercial information, because there would be no category of information falling within it but outside that for trade secrets. *See Anderson*, 907 F.2d at 944; *Public Citizen Health Research Group*, 704 F.2d at 1288-89.  We have said:

> Statutes must be construed so that no portion is rendered meaningless.  Interpretation should not produce an absurd result.  We are guided by the full text of the statute, paying attention to its internal structure and the functional relation between the parts and the whole.  Each word of a statute is to be afforded meaning, with none rendered superfluous.  Further, the meaning afforded to a word should be that word's standard popular meaning unless another meaning is clearly intended.  If the meaning of a word is

---

> The definition of a trade secret contained in this Section, however, is directly applicable only to the imposition of civil liability under the rules stated in § 40. It does not apply, other than by analogy, in actions under criminal statutes or in other circumstances not involving civil liability for the appropriation of a trade secret, such as the protection of trade secrets from disclosure under the Freedom of Information Act (5 U.S.C. § 552).

Restatement, *supra*, § 39 cmt. b.  Similarly Wyoming's Trade Secrets Act states:

> (a) Except as provided in subsection (b) of this section, this act displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret.
>
> (b) This act does not affect:
>
> (i) Contractual remedies, whether or not based upon misappropriation of a trade secret;
> (ii) Other civil remedies that are not based upon misappropriation of a trade secret; or
> (iii) Criminal remedies, whether or not based upon misappropriation of a trade secret.

Wyo. Stat. Ann. § 40-24-107.

> unclear, it should be afforded the meaning that best
> accomplishes the statute's purpose.

*McTiernan v. Jellis*, 2013 WY 151, ¶ 20, 316 P.3d 1153, 1160 (Wyo. 2013). Giving effect to all words and phrases in the WPRA requires an interpretation that does not include any and all information that is confidential commercial information within the concept of trade secrets.

[¶43] Accordingly, we hold that a trade secret under the WPRA is a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort, with a direct relationship between the trade secret and the productive process.

### *Hydraulic Fracturing Ingredient Identities*

[¶44] We are left with the question of whether individual ingredients of hydraulic fracturing formulae can constitute trade secrets under the definition we adopt above. We cannot resolve that issue in this appeal, unfortunately. The Commission and intervenor Halliburton contend that disclosure of individual chemicals will reveal trade secrets because competitors who employ chemists and petroleum geologists can reverse-engineer formulas for a product if they know the wells the product is used upon, the general geology of the area, and the identity of certain chemicals, even if they do not know the precise quantity of the chemical used in the product. Appellants contend the contrary. Each side has experts who will render opinions on this issue. The district court must independently resolve this dispute based on the credibility of the witnesses and persuasiveness of the evidence presented by each party.

## CONCLUSION

[¶45] A trade secret under the WPRA is a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort, with a direct relationship between the trade secret and the productive process. We are unable to determine whether the identity of individual chemicals may be trade secrets in the context of hydraulic fracturing operations based upon the information in the record, and therefore do not reach that issue.

[¶46] Because the district court reviewed the Commission Supervisor's decision under the APA, we must reverse and remand. The district court is directed to determine whether it will permit Appellants to amend their existing pleadings to request and issue an order to the Supervisor to show cause as to why the documents requested should not be produced, or dismiss the case, which will permit Appellants to file a new action. In

17

either event, the district court is required to determine as a matter of fact on evidence presented to it whether the information sought is a trade secret, and not whether the Supervisor acted arbitrarily or capriciously under the deferential administrative standards applied in the original proceedings. The district court will have to review the disputed information on a case-by-case, record-by-record, or perhaps even on an operator-by-operator basis, applying the definition of trade secrets set forth in this opinion and making particularized findings which independently explain the basis of its ruling for each.

[¶47]   Reversed and remanded for further proceedings consistent with this opinion.