# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 77

APRIL TERM, A.D. 2016

*August 3, 2016*

JONMICHAEL GUY,

Appellant
(Plaintiff),

v.

ROBERT LAMPERT, Wyoming
Department of Corrections Director,
STEVE HARGETT, Wyoming Medium
Correctional Institution Warden, and
KATHY LONG, Wyoming Medium
Correctional Institution Business Manager,

Appellees
(Defendants).

S-15-0237

*Appeal from the District Court of Goshen County*
*The Honorable Keith G. Kautz, Judge*

*Representing Appellant:*
    Pro se

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; James Kaste, Deputy Attorney
    General; Elizabeth Morrisseau, Assistant Attorney General

*Before BURKE, C.J., and HILL, DAVIS, FOX, JJ, and CAMPBELL, DJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**CAMPBELL, District Judge**.

[¶1]    JonMichael Guy is an inmate at Wyoming's medium-security correctional facility in Torrington.  He appeals from two orders of the district court relating to his request to examine certain public records of that institution.[1]  We affirm.

## ISSUES

[¶2]    Stripped of several overwrought technical arguments relating to Issue 1, which were rendered largely pointless by two recent decisions of this Court,[2] the issues raised by Guy may be reduced to the following:

> 1.  Did the district court properly dismiss Guy's constitutional claims seeking declaratory and injunctive relief and compensatory damages?

> 2.  Did the district court properly conclude the defendants had satisfied their burden of demonstrating that, at the time of its February 10, 2015 hearing, Guy had been provided access to all records addressed in his January 6, 2014 request?

> 3.  Does the federal Freedom of Information Act (FOIA) preempt the Wyoming Public Records Act (WPRA)?

> 4.  Did the district court communicate with the defendents *ex parte*?

## FACTS

[¶3]    On January 6, 2014, Guy wrote a letter to Warden Steve Hargett, wherein he asked to inspect records created during the four most recent fiscal years, predominantly those related to the Inmate Commissary Fund and the Departmental Assistance Fund accounts. His request was for all documents pertaining in any way to expenditures and transfers of funds into and out of those accounts, or for procuring inmate "educational materials."[3]

---

[1] That request and the ensuing proceedings are governed by the Wyoming Public Records Act, Wyo. Stat. Ann. §§ 16-4-201 through 205 (LexisNexis 2015).

[2] Those decisions, *Powder River Basin Resource Council v. Wyoming Oil and Gas Conservation Comm'n*, 2014 WY 37, 320 P.3d 222 (Wyo. 2014), and *Guy v. Lampert*, 2015 WY 148, 362 P.3d 331 (Wyo. 2015), collectively addressed the scope of proceedings under the WPRA and their relationship to other sorts of proceedings against governmental entities.

[3] Apparently, the acquisition of educational materials and equipment is handled through yet another of the facility's operational accounts, while inmate recreational acquisitions are handled through the Assistance account.

1

On January 10, 2014, the warden advised Guy in writing that the institution would immediately begin to make the requested records available for his inspection.

[¶4]    After considering security issues and concerns with the integrity of the files involved, as well as the volume of the records requested, the warden again wrote to Guy on January 27 to inform him that the documents would be provided to him in electronic form.[4]  The Warden also informed Guy of the anticipated schedule of delivery of the material, and that there would be two installments, one in March and one in May 2014.

[¶5]    As a consequence of staffing issues within the business office and the timing of the requests (coincident with the institution's June 30th budget deadline), they were unable to complete work on Guy's request in accordance with the warden's projected schedule.  By the end of May 2014, they had provided only 16 CDs containing 1348 files and 10,164 pages of documents.  Those totals eventually grew to delivery of 29 CDs containing 2069 files and 15,127 pages of documents.

[¶6]    The Warden honored Guy's request to meet with him and business manager Kathy Long, and on May 23 again assured that Ms. Long would provide him with all requested documents.  Nevertheless, Guy soon filed an institutional grievance over the matter and later pursued a two-level appeal from the denial of that grievance to, sequentially, the warden and the director of the Department of Corrections.  The director advised him on August 24, 2014, that his final grievance appeal had been denied.

[¶7]    On September 12, 2014, Guy filed his "Complaint for Order of Enforcement and Request to Show Cause" in the district court.[5]  He asserted that, because the institution's employees had not timely completed their efforts to fulfill his records request, they had in effect refused to comply under the law.  He sought an order that required Appellees to comply with the Act and release the records set out in his January 6 request.  In addition, he asked the court to declare that their alleged noncompliance constituted a knowing and intentional violation of his rights under the First and Fourteenth Amendments to the United States Constitution, to enjoin them from thereafter failing to act on any public records requests, and to award him monetary "compensatory damages" for the costs incurred in this action.

[¶8]    On November 17, 2014, the State defendants filed their answer, noting that they continued to transfer the records requested to CDs and make them available.  They also

---

[4] The warden and his staff considered allowing Guy to view the original paper versions of those records in either the business office or his cell.  They rejected the first option because the business office was not in a secure area of the institution, thus necessitating the assignment of security personnel to attend to Guy's visits.  The second option was rejected because of concerns with preserving the integrity of the files.

[5] Wyo. Stat. Ann. § 16-4-203(f) provides, "Any person denied the right to inspect any record covered by this act may apply to the district court of the district wherein the record is found for an order directing the custodian of the record to show cause why he should not permit the inspection of the record."

2

contended that awarding damages or granting declaratory or injunctive relief would be unlawful in a statutory judicial proceeding under the Public Records Act.

[¶9]     On November 26, Guy filed a motion for summary judgment in which he asserted there was no issue of material fact as to whether the institution had finished compiling the records addressed in his January 6 request.  The defendants moved to strike that motion on December 15, and a hearing on all matters was conducted on February 10, 2015.

[¶10]  Between July 9, 2014 and January 15, 2015, the institution had made available to Guy thirteen CDs containing the remainder of the requested records that had not yet been scanned and delivered to him by his May 2014 meeting.

[¶11]  On February 27, 2015, the district court issued its "Findings of Fact, Conclusions of Law and Order" relating to Guy's Public Records Act request, and a separate order relating to the defendants' contention that his allegations of constitutional errors should be dismissed because they did not state a claim for which relief could be granted.  As to the Public Records Act proceeding, the court found that the defendants had not denied Guy access to any public records as they had provided him all the records he requested on January 6, 2014.  The court concluded that only a narrow scope of judicial review was authorized under the Act, and that the Act's limited remedies did not entitle him to review of his constitutional claims.[6]  Because the defendants satisfied the request for records, the court dismissed Guy's complaint.

## DISCUSSION

**Dismissal of the Constitutional Claims**

[¶12]  Guy invoked the district court's jurisdiction under Wyo. Stat. Ann. § 16-4-203(f) to evaluate the State defendants' response to his Public Records Act request.   In his pleadings, he also asked the court to consider federal constitutional claims and to grant him declaratory and injunctive relief and compensatory damages on those claims.  He now challenges the court's conclusion that the limited judicial review authorized by the Act does not extend to such claims and forms of relief.

[¶13]  That poses a question of statutory interpretation, a legal question that we examine *de novo*.  *Powder River Basin Resource Council v. Wyoming Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 228 (Wyo. 2014).

---

[6] This Court agrees with that conclusion, and it finds support in our recent cases, identified above in note 2.  Accordingly, we need not address the district court's second order, wherein it identified substantial and fatal defects in Guy's pleading of his constitutional claims and dismissed his complaint on that additional basis.

3

[¶14] In crafting the WPRA, the legislature anticipated that disagreements would arise between members of the public and the various custodians of public records as to whether particular documents or pieces of information are subject to disclosure and inspection under the Act. It therefore specified that those conflicts could be resolved in the district court by applying for an order directing the custodian to show cause why inspection of a denied record should not be permitted. In short, the custodian must explain why she denied access to specified records, and/or explain why the court should not grant the requesting party some relief from the custodian's decision. *Id.* at ¶¶ 22-23, 320 P.3d at 229-30. That procedure is the exclusive means of challenging a State governmental entity's denial of access to the records it maintains. *Id.* at ¶ 28, 320 P.3d at 230.

[¶15] More recently, we had occasion to consider the limited scope of the judicial review procedures created by the WPRA in *Guy v. Lampert*, 2015 WY 148, 362 P.3d 331 (Wyo. 2015). That case involved a separate public records request by this same Appellant for the Code of Ethics promulgated by the Department of Corrections. Although that request was initially denied, he was later permitted to view the document less than a month after he submitted the request. *Id.* at ¶¶ 4-5, 362 P.3d at 333. Nevertheless, Guy sought WPRA judicial review of his request and, as in the present case, he accompanied his allegations of violations of the act with claims of constitutional violations and prayers for declaratory and injunctive relief and compensatory damages. *Id.* at ¶ 8, 362 P.3d at 334.

[¶16] Relying primarily on the principle of statutory construction that we should "not read remedies into a statute that were not put there by the legislature," we affirmed the district court's dismissal of the action. *Id.* at ¶ 19, 362 P.3d at 338. We held that the WPRA provides remedies only for the denial of access to public records, and that once that access is ultimately, even if belatedly, granted—whether as a product of the custodian's volition or a court order following a determination that non-disclosure is contrary to the Act—no other remedy is available, whether it be declaratory or injunctive in nature or a monetary remedy at the behest of a private citizen. *Id.* at ¶¶ 18-21, 362 P.3d at 338-39.

[¶17] We find those principles equally applicable to the present case, and therefore affirm the district court's determination in that regard.

**The Ruling That Guy Received the Records**

[¶18] Guy insists the defendants denied him access to the documents set out in his records request of January 6, 2014, and claims the district court's contrary conclusion rested on both legal and factual errors. Because the alleged legal error turns on interpretation of the language of the WPRA, our review of that question—as noted above—is *de novo*. We review challenges to the factual findings of the district court

under the clearly erroneous standard. *Cross v. Berg Lumber Co.*, 7 P.3d 922, 928 (Wyo. 2000).

[¶19] For his allegation of legal error, Guy reasserts the position he advanced in the district court that, if it takes a protracted amount of time to compile records for inspection, such amounts to a denial of access to those records. Nothing in the text of the Act, however, supports that view. Although the Act indicates that "readily available" public records should be released immediately, that directive only applies to the extent it does not impair or impede the agency's ability to discharge its other duties. Wyo. Stat. Ann. § 16-4-202(c). Here, the custodian's staff remained depleted by 40% during an unusually busy time of the fiscal year, the records requested by Guy were voluminous, and for security reasons the records had to be searched, organized, electronically scanned, and reduced to a digital form. The more typical situation where arrangements could be made for a member of the public to inspect the documents where they are regularly maintained was not possible under these unique circumstances. To accept Guy's view of the law would require this Court to ignore the allowances crafted by the legislature, and to effectively amend the Act. Thus, we must agree with the district court and reject Guy's claim of legal error.

[¶20] Guy's claim that the district court made a clearly erroneous finding as to the defendants' satisfaction of his records request identifies only that he did not receive any records of the time spent by business office staff converting the documents covered by his January 6, 2014 request into digital form, and that he did not receive bidding and purchasing documents relating to the computers provided for inmate use.

[¶21] The request at issue here covered only documents created in the four years preceding January 6, 2014, and therefore did not include documents created after that date. The district court heard from Ms. Long that her office created no documents which, in the words of Guy's request, "reveal the exact dates any and all of the aforementioned documents were converted into digital format." She indicated they kept no detailed track of the hours spent on any particular task relating to the fulfillment of Guy's request, but were aware that they had spent an aggregate of something more than 380 hours on his request. We find nothing in these facts to detract from the district court's conclusion that the defendants had withheld none of the requested public records.

[¶22] The Appellant presents only speculation that Ms. Long testified untruthfully that, if computers were purchased during the four years covered by Guy's request, the bidding documents and invoices relating to those computers would be among the records provided to him. Given the record made by the parties, it was not clearly erroneous for the district court to conclude that Guy received all the documents described in his January 6, 2014 request.

**FOIA Preemption**

[¶23] Guy contends a provision of the federal FOIA, relating to the ability of a "prevailing party"[7] in a public records case to obtain an award of costs, should be read into the WPRA by virtue of the doctrine of preemption. He is mistaken.

[¶24] The preemption doctrine arises by virtue of the Supremacy Clause of Article VI of the United States Constitution, which invalidates state laws that interfere with or are contrary to federal law and nullifies them to the extent they actually conflict with federal law. It generally comes into play only to the extent it is physically impossible to comply with both state and federal law or the former obstructs implementation of congressional objectives, and it is triggered by one of three circumstances. Preemption may arise due to an express statement of congressional intent to that effect. It may be triggered inferentially from a federal statutory scheme that so comprehensively pervades an area of law on a given subject that no room is left for supplementary state regulation. Finally, it may arise inferentially when the federal interest in a given subject so dominates over any state interest that federal law on the matter should preclude enforcement of state law on the subject. *Dynan v. Rocky Mtn. Fed. Sav. & Loan*, 792 P.2d 631, 636-37 (Wyo. 1990); *Hillsborough County, Fla. v. Automated Medical Lab., Inc.*, 471 U.S. 707, 712-13, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).

[¶25] What unites those three triggers is that preemption is limited to situations where state and federal statutes cover an identical subject. However, the subject matter of the WPRA is confined to records of "the state or any agency, institution or political subdivision of the state." Wyo. Stat. Ann. § 16-4-201(a)(v) (defining the term "public records"). It does not purport to reach records of the federal government. On the other hand, the FOIA relates only to records of executive branch agencies of the United States Government. 5 U.S.C. § 551(1), § 552(f)(1) (defining "agency"). It does not purport to apply to the records of any state government.

[¶26] No provision of the FOIA can be said to preempt the WPRA.

**The Alleged *Ex Parte* Communication**

[¶27] The district court found that Warden Hargett initially responded to Guy's January 6, 2014 public records request on January 10, 2014. Guy now contends that finding must have been provided to the court in a prohibited *ex parte* communication—that is, a communication between the district court and the defendants with respect to which Guy was given no notice and no opportunity to respond to and rebut that information. Such

---

[7] Our manner of resolving this issue makes it unnecessary to discuss Guy's imaginative but dubious contention that he should be considered as "prevailing" in this litigation in any ordinary sense.

6

accusations are viewed seriously, whether they turn out to have some substance or, as here, when they prove to be utterly frivolous.

[¶28] Here, the Appellant's own Exhibit 1, admitted during the February 10, 2015 evidentiary hearing, contains the information the district court relied upon for the challenged finding. The first page of that exhibit, as it appears in the record, is an Inmate Communication Form, and the second page is the actual public records request that Guy appended to that form. The top half of the form, dated January 7, 2014, asked the warden to have the items on the attached request made available for Guy's inspection. The bottom half of the form is, on its face, the warden's January 10, 2014 response to what Guy asked for in the top of the form. It advised him that records falling within one of the categories listed on the attached request were available for review.[8]

[¶29] Given that Guy put this material before the district court in a proceeding in which he was given leave to freely testify and explain all matters relating to his public records request, his present claim is patently frivolous, and we cannot conclude the court received the material via an *ex parte* communication.

### CONCLUSION

[¶30] The district court properly confined the scope of its review to that permitted by the WPRA, properly found that the defendants fully complied with Guy's records request, and properly received information regarding the warden's initial response to that request. Moreover, there has been no preemption of Wyoming's Public Records Act. We affirm the court's order in all respects.

---

[8] Guy's brief suggests the warden was responding to an earlier, different record request, but nothing in the record before us supports that suggestion. More importantly, the issue we have been asked to determine as to the warden's response is not its meaning, but how it came to the attention of the district court.